UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

SHARON ADKINS,

        Plaintiff,                                   CASE NO. 1:11-CV-00136
                                                     HON. ELLEN CARMODY

v.

CITY OF GRAND HAVEN and
THOMAS MITCHELL CAREY,

        Defendant.
_____/

## OPINION

### I. OVERVIEW

This matter is before the court on a motion for summary judgment brought by defendant City of Grand Haven (Dkt. 34). The parties were heard on May 30, 2012. Fr the reasons stated on the record, the City of Grand Haven's motion is granted. Plaintiff, Sharon Adkins ("Adkins"), seeks to hold the City of Grand Haven ("City") directly liable for the allegedly unconstitutional acts of Grand Haven police officer Thomas Carey, under 42 U.S.C. § 1983 and *Monell v. Department of Social Services*, 436 U.S. 658 (1978), which state that a municipality is liable for a constitutional violation when the execution of the municipality's policy or custom inflicts the alleged injury. *Id.* at 698. Where failure to train or supervise is the result of a municipality's policy or custom, and this results in a constitutional violation by its officers, a city can be held liable under § 1983. *City of Canton v. Harris*, 489 U.S. 378, 389 (1989).

Adkins argues that the failure to train and supervise Officer Carey, when the City knew or should have known he was a threat to use his power as a police officer to sexually assault vulnerable members of the general public, was the "moving force" behind the alleged criminal sexual conduct

and the deprivation of her rights under the Fourth and Fourteenth Amendments to the United States Constitution. Adkins claims that the City knew Officer Carey needed extra training and supervision as a result of his previous interactions on the City's computers and Ms. Davis' statements regarding her sexual relationship with Officer Carey, of which Adkins claims members of the Grand Haven Police Department ("Department") were aware. The City argues that Adkins lacks evidence to support the theory that the City knew or should have known that Officer Carey needed extra training or supervision.

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Officer Thomas Carey was an employee of the City of Grand Haven Police Department from February 9, 1989 to August 19, 2009. (MSJ Ex. 1 and 2.)

In January of 2003, Carey was disciplined by the Grand Haven Police Department for using the City's computer system for a flirtatious conversation with a woman in a chat room, which included the downloading of a "pornographic photograph" of the person with whom Carey was conversing. (MSJ Ex. 5 at 1.) Carey was given the option of being suspended without pay for two weeks or voluntarily agreeing to attend a counseling program, in which case the suspension would be modified to a forty-two hour suspension without pay. (MSJ Ex. 5 at 1.) In April of 2009, Carey requested that the discipline be removed from his personal file. (MSJ Ex. 6 at 2.) The Department denied the removal based on the severity of the policy violation, but noted that Carey was currently doing an excellent job for the Department and it was confident this would continue. (MSJ Ex. 6 at 1.)

In January of 2008, Sharon Adkins called the Department to report that she had been

followed home while biking back from a friend's house.  Officer Carey went to Adkins' house to take the report.  (MSJ Ex. 8 at 2.)  Carey returned approximately an hour to an hour and a half later to check on her, and hugged her for approximately 10 minutes.  Carey was alone and in uniform on both occasions.  (MSJ Ex. 8 at 3.)  Several nights later, Carey again went to Atkins' house, proposed that Adkins perform oral sex on him, and did receive oral sex from Adkins.  (MSJ Ex. 8 at 4.)  Carey repeated this activity on several occasions through March of 2009. Adkins stated she performed oral sex on Carey approximately 10-12 times, and in 9-10 of those occurrences, Carey was on duty, in uniform, and was always alone.  (*Id.*)

In May of 2009, Ottawa County Adult Protective Services informed Chief Dennis Edwards that Officer Carey had engaged in a sexual relationship with a woman (Adkins) who was considered a vulnerable adult as a result of her mental state.  (MSJ Ex. 8 at 27.)  He later learned the vulnerable adult (Adkins) alleged that Carey met her while responding to a 911 call and would visit her apartment while on duty.  (*Id.*)  Additionally, another woman alleged that Carey had a sexual relationship with her and would stop by her home while on duty.  (*Id.*)  An investigation showed that Carey had a consensual sexual relationship with the second woman since 2005, and approximately 70% of the encounters occurred while Carey was on duty and in uniform.  (*Id.*)  Before receiving the call from the Ottawa County Adult Protective Services, Chief Edwards did not know that Officer Carey was engaging in sexual relationships with either woman, nor did he have reason to believe any supervisory member of the Department of Public Safety knew Carey was engaging in those relationships.  (MSJ Ex. 7 at 2.)  Additionally, Edwards was not aware of any Grand Haven police officers who had initiated sexual relationships and participated in sexual conduct while on duty.

(MSJ Ex. 7 at 3.) Edwards requested the Michigan State Police to conduct an investigation of the allegations. (*Id.*)

Sharon Adkins filed a complaint in this Court alleging two counts against the City of Grand Haven:

- Count I: Violation of Civil Rights Pursuant to 42 U.S.C. § 1983 against the City of Grand Haven and Officer Carey; and

- Count II: Violation of Civil Rights Pursuant to 42 U.S.C. § 1983 against the City of Grand Haven.

At the scheduling conference on November 21, 2011, Officer Carey's new attorney suggested extending the deadlines so he could prepare Carey's defense. The parties and this Court agreed to bifurcate the proceedings. The first phase was reserved for the issue of whether the City had a policy or custom that led to Plaintiff's alleged constitutional injury. Adkins was permitted to conduct discovery to substantiate her claims against the City. The first phase of discovery has concluded, and the City now moves for summary judgment.

### III. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion." Fed. R. Civ. P. 56(a). In determining whether there is a genuine issue of material fact, the record is viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The moving party has the burden of establishing there are no genuine issues of material fact. *Darrah v. City of Oak Park*, 255 F.3d 301 (6th Cir. 2001). A material fact is "one that might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A disputed fact

4

presents a genuine issue "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The nonmoving party may not rest upon the mere allegations of the pleadings, and instead must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56.

## IV. ANALYSIS

The issue presented is whether Adkins has advanced sufficient evidence to create a genuine issue of material fact as to whether the City knew, or should have known, that Officer Carey needed extra training and supervision, and whether the lack of training and supervision caused the alleged constitutional violation. Adkins claims the City of Grand Haven is liable as a result of its failure to provide adequate training in light of foreseeable consequences that could result from the lack of instruction. *Brown v. Shaner*, 172 F.3d 927, 931 (6th Cir. 1999). To prevail on such an inaction theory, where a policy of tolerating federal rights violations is allegedly unwritten but entrenched, plaintiff must show:

> (1) the existence of a clear and persistent pattern of illegal activity; (2) notice or constructive notice on the part of the defendants; (3) defendants' tacit approval of the unconstitutional conduct, such that their deliberate indifference in failing to act can be said to amount to an official policy of inaction; and (4) that defendants' custom was the "moving force" or direct causal link in the constitutional deprivation.

*Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005).

The evidence must show the need to act was so obvious that the City's conscious decision not to act can be said to amount to a "policy" of deliberate indifference to Adkins' constitutional rights. *Doe v. Claiborne County*, 103 F.3d 495, 507 (6th Cir. 1996). "Deliberate indifference" in this context means evidence showing an obvious, deliberate indifference to sexual abuse. *Id*.

**A.** *Existence of a Clear and Persistent Pattern, Notice, or Constructive Notice of Illegal Activity*

5

Adkins cannot show that the City had knowledge, notice, or constructive notice of a clear and persistent pattern of illegal activity. Even if the City did not properly train Officer Carey, Adkins must still show prior instances of unconstitutional conduct demonstrating the City has ignored a history of abuse and was clearly on notice the training in this particular area was deficient and likely to cause injury. *St. John v. Hickey*, 411 F.3d 762, 776 (6th Cir. 2005). Adkins claims that Officer Carey's flirtatious conversation and downloading of a pornographic photograph on City computers should have given the City notice of the need for additional training; however, these actions did not put the City on notice that Officer Carey may sexually assault a vulnerable member of the general public while on duty. *Reinhardt v. Dennis*, 399 F. Supp. 2d 803, 805 (W.D. Mich. 2005) is instructive. In *Reinhardt*, a high-school student participated in a "ride-along program" with the Ionia Country Sheriff's Department, and was sexually assaulted by an on-duty officer. The court in *Reinhardt* held the officer's "prior inappropriate communications of a sexual nature simply cannot be deemed to have placed defendants on notice" that the plaintiff was at an obvious risk of serious harm when she rode-along with the officer. *Id.* at 809. Similarly, Officer Carey's flirtatious consensual conversation on the internet, while highly inappropriate, did not put the City on notice that he was an obvious risk of serious harm to Adkins. Adkins presents no other evidence to support assertions that the City ignored an obvious risk of sexual assault by Officer Carey on a member of the public he was hired to protect. Plaintiff attempts to rely on an unsworn hearsay statement by Margie Davis that Ms. Davis thought Sergeant Christopher Wright was aware of an inappropriate sexual relationship Officer Carey had with her. Sergeant Wright has filed a sworn statement flatly denying knowledge of the Davis/Carey relationship, stating, inter alia, at ¶ 6: "Upon learning of the

charges against Tom Carey, I was in utter disbelief."[1] The City thus did not have knowledge of a clear and persistent pattern of illegal activity, notice, or constructive notice that the training in this particular area was deficient and likely to cause injury.

**B.** *Deliberate Indifference*

The City was not "deliberately indifferent" to Officer Carey's actions. The deliberate indifference standard has been held to be a stringent standard of fault "requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 410 (1997). Instead, the City has shown that it distributes its Department Manual to each member of the department, and all personnel must "familiarize" themselves with the department directives. (Def.'s Reply Br. Ex. 1.) In the event of disciplinary action, ignorance of the directives will not excuse the infraction. (*Id.*) Among the Rules of Conduct contained within the General Orders are "ethics" and "integrity" sections. (*Id.*) Officer Carey was also trained in Vulnerable Adult Abuse, Public Perception of Police Officers, Integrity Based Policing, and Sexual Harassment. (*Id.*) Additionally, Lieutenant Joseph Boyle, who is responsible for overseeing training activities, stated, "it is my opinion that all police officers recognize and understand that sexual conduct (whether consensual or not) between on duty, uniformed police officers and members of the general public, as alleged in this case, is inappropriate, unacceptable, and violative of the duties of a law enforcement officer." (*Id.*) These policies are created to ensure that officers, such as Officer Carey, act responsibly while on duty, and the policies do not encourage or disregard the possibility of officers sexually assaulting the general public. The training rules and

---

[1] A party opposing a motion for summary judgment cannot use hearsay or other inadmissible evidence to create a genuine issue of material fact. *Weberg v. Franks*, 229 F.3d 514, 526 n. 13 (6th Cir. 2000).

policies show that no reasonable trier of fact could conclude that the City of Grand Haven was deliberately indifferent in its training or supervision.

Additionally, Adkins claims a narrow exception stated in *City of Canton*, and further discussed in *Board of Commissioners of Bryan County,* where the need for more or different training is "so obvious" the policy makers of the city can reasonably be said to have been deliberately indifferent to the need without prior instances of this kind of behavior. *Canton*, 489 U.S. at 390; *Bd. of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 410 (1997). In *Canton*, the Court gave the example of a city arming its officers with firearms for the purpose of arresting fleeing felons. *Id.* at 390, n.10. Thus, the need to train officers in the constitutional limitations on deadly force can be said to be "so obvious," the failure to do so could properly be characterized as "deliberate indifference" to constitutional rights. *Id.*; *see Tennessee v. Garner*, 471 U.S. 1 (1985) (shooting of appellee's son, who was a suspect in a burglary, was not an acceptable use of deadly force). Adkins' argument fails because training officers to use firearms and teaching officers to not sexually assault a vulnerable member of the general public while on duty are not analogous situations. The court in *Mize v. Tedford* stated,

> It is not enough to aver generally that all police officers have a known propensity to commit sexual assaults. Rather, in failure to train claims, the focus of the court's inquiry is on the training program itself.

*Mize v. Tedford*, No. 08-CV-10660, 2009 WL 1508373, at *12 (E.D. Mich. May 29, 2009).

A reasonable trier of fact could find deliberate indifference to constitutional rights "so obvious" when a municipality allows officers to operate firearms with no training; however, a reasonable trier of fact could not find it obvious that training is necessary for an officer to know they should not engage in sexual conduct with a vulnerable member of the general public while on duty.

8

In any event, the City of Grand Haven did provide Carey with training on the topics noted above. Additionally, sexual assault is not a highly predictable consequence of a failure to equip law enforcement officers with specific tools or training to handle recurring situations such as interacting with vulnerable members of the general public. The City's policies did not show deliberate indifference to an obvious risk.

## C. *Moving Force*

Because the record fails to create a genuine factual dispute regarding the City's notice of prior constitutional violations, the obviousness of the risk, or the adoption of a custom or policy of inaction, no such custom or policy was the moving force behind Adkins' injuries. The record fails to support a finding that the City was deliberately indifferent and that there was a direct causal link between its deliberate indifference and the deprivation of Adkins' rights.

## V. CONCLUSION

The City's Motion for Summary Judgment will be granted. Adkins has not shown that there existed a clear and persistent pattern, notice, or constructive notice of illegal activity, and the City's policies and customs are not "deliberately indifferent" to or the "moving force" behind Adkins

alleged constitutional violations. Officer Carey was trained, there is no evidence of prior incidents, and the need for more or better training was not obvious.

Date: June 12, 2012 /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge